## UNITED STATES  DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

DELMAR EUGENE COX                                    CIVIL ACTION

versus                                                          NO. 10-1596

BURL CAIN, WARDEN, LSP                         SECTION: "R" (1)

## REPORT AND RECOMMENDATION

This matter was referred to this United States Magistrate Judge for the purpose of conducting a hearing, including an evidentiary hearing, if necessary, and submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases in the United States District Courts.  Upon review of the record, the Court has determined that this matter can be disposed of without an evidentiary hearing.  See 28 U.S.C. § 2254(e)(2).  Therefore, for all of the following reasons, **IT IS RECOMMENDED** that the petition be **DISMISSED WITH PREJUDICE**.

Petitioner, Delmar Eugene Cox, is a state prisoner incarcerated at the Louisiana State Penitentiary, Angola, Louisiana.  On April 27, 2006, he was convicted of second degree murder in

violation of Louisiana law.[1]  On July 12, 2006, he was sentenced to a term of life imprisonment without benefit of probation, parole, or suspension of sentence.[2]  On March 28, 2007, the Louisiana First Circuit Court of Appeal affirmed his conviction and sentence.[3]  The Louisiana Supreme Court then denied his related writ application on November 21, 2007.[4]

On November 19, 2008, petitioner filed with the state district court an application for post-conviction relief.[5]  That application was denied on December 15, 2008.[6]  His related writ applications were likewise denied by the Louisiana First Circuit Court of Appeal on April 14, 2009,[7] and by the Louisiana Supreme Court on February 26, 2010.[8]

On May 14, 2010, petitioner filed the instant federal application for *habeas corpus* relief.[9]  In support of his application, he asserts the following claims:

---

[1] State Rec., Vol. V of V, transcript of April 27, 2006, p. 613; State Rec., Vol. III of V, minute entry dated April 27, 2006.

[2] State Rec., Vol. V of V, transcript of July 12, 2006; State Rec., Vol. III of V, minute entry dated July 12, 2006.

[3] State v. Cox, 2007 WL 914880 (La. App. 1st Cir. Mar. 28, 2007) (No. 2006 KA 1685); State Rec., Vol. I of V.

[4] State v. Cox, 967 So.2d 1155 (La. 2007) (No. 2007-KO-1073); State Rec., Vol. I of V.

[5] State Rec., Vol. V of V.

[6] State Rec., Vol. V of V, Order and Written Reasons dated December 15, 2008.

[7] State v. Cox, No. 2009 KW 0042 (La. Apr. 14, 2009) (unpublished); State Rec., Vol. I of V.

[8] State *ex rel.* Cox v. State, 28 So.3d 266 (La. 2010) (No. 2009-KH-1004); State Rec., Vol. I of V.

[9] Rec. Doc. 1.

1.      There was insufficient evidence to support petitioner's conviction;

2.      Petitioner's trial counsel was ineffective;

3.      Petitioner's appellate counsel was ineffective; and

4.      Petitioner is actually innocent.

The state concedes that the application was timely filed.[10]

## I.  Standards of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") comprehensively overhauled federal *habeas corpus* legislation, including 28 U.S.C. § 2254. Amended subsections 2254(d)(1) and (2) contain revised standards of review for questions of law, questions of fact, and mixed questions of law and fact.  The amendments "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law."  Bell v. Cone, 535 U.S. 685, 693 (2002).  Provided that the state court adjudicated the claim on the merits, pure questions of law and mixed questions of law and fact are reviewed under § 2254(d)(1) and pure questions of fact are reviewed under § 2254(d)(2).  Hill v. Johnson, 210 F.3d 481, 485 (5th Cir. 2000).

---

[10]  Rec. Doc. 14, p. 3.  The state argues, however, that petitioner's third and forth claims are unexhausted. Rec. Doc. 14, pp. 3-4.  This Court disagrees.  The record reflects that the claims were presented to the state courts in the post-conviction proceedings.  Moreover, in any event, the claims have no merit, and the Court has the authority to deny *habeas* claims on the merits regardless of whether they were properly exhausted.  28 U.S.C. § 2254(b)(2); Jones v. Jones, 163 F.3d 285, 299 (5th Cir. 1998); Woods v. Cain, Civil Action No. 06-2032, 2008 WL 2067002, at *8 n.8 (E.D. La. May 13, 2008).

As to questions of law and mixed questions of law and fact, a federal court must defer to the state court's decision unless it "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1).  Courts have held that the "'contrary to' and 'unreasonable application' clauses [of § 2254(d)(1)] have independent meaning."  Bell, 535 U.S. at 694.

Regarding the "contrary to" clause, the United States Fifth Circuit Court of Appeals has explained:

> A state court decision is contrary to clearly established precedent if the state court applies a rule that contradicts the governing law set forth in the [United States] Supreme Court's cases.  A state-court decision will also be contrary to clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of the [United States] Supreme Court and nevertheless arrives at a result different from [United States] Supreme Court precedent.

Wooten v. Thaler, 598 F.3d 215, 218 (5th Cir. 2010) (internal quotation marks, ellipses, brackets, and footnotes omitted).

Regarding the "unreasonable application" clause, the United States Supreme Court has explained:

> [A] state-court decision can involve an "unreasonable application" of this Court's clearly established precedent in two ways.  First, a state-court decision involves an unreasonable application of this Court's precedent if the state court identifies the correct governing legal rule from this Courts cases but unreasonably applies it to the facts of the particular state prisoner's case.  Second, a state-court decision also involves an unreasonable application of this Court's precedent if the state court either unreasonably extends a legal principle from our precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply.

Williams v. Taylor, 529 U.S. 362, 407 (2000).  The Supreme Court has noted that the focus of this inquiry "is on whether the state court's application of clearly established federal law is objectively unreasonable, and we stressed in Williams that an unreasonable application is different from an incorrect one."  Bell, 535 U.S. at 694.

As to questions of fact, factual findings are presumed to be correct and a federal court will give deference to the state court's decision unless it "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2); see also 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct.  The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.").

## II.  Facts

On direct appeal, the Louisiana First Circuit Court of Appeal summarized the facts of this case as follows:

> Cox, his long-time girlfriend, Tiffanie Booty, and their three children lived in a trailer in Kentwood, Tangipahoa Parish, near the house of Wallace Ballard.  At one time, Booty and Booty's mother had lived with Ballard.  On August 10, 2004, Cox went to Ballard's house and shot and killed Ballard with a twelve-gauge shotgun.  He took Ballard's wallet.
>
> Cox, Booty, and their children left in Ballard's car and drove to the Magnolia Inn Hotel in Hammond.  They rented a room with money from Ballard's wallet.  Shortly thereafter, Cox contacted his brother, who picked up him and his family at the hotel and brought them to Cox's pickup truck near Cox'[s] house.[FN1]

[FN1]  The defendant's truck had run out of gas.  The defendant's brother brought the defendant to get gas for his truck.  Ballard's car was found at O'Reilly's Auto Parts in Hammond.

Cox and his family then drove to Rainey's Auto Sales in Kentwood where and [sic] Booty bought a used Dodge Caravan.[FN2]  Cox removed from his truck the shotgun he used to kill Ballard and asked Rainey to hold it for him.[FN3]  Rainey agreed and put the shotgun in a closet in his office.  The defendant left his truck at Rainey's, and he and his family headed to Mississippi in the Dodge Caravan.

[FN2]  Booty used her identification card for the sale, and she signed the bill of sale and the motor vehicle registration.  The defendant gave Sam Rainey a down payment of $600.00 in cash.

[FN3]  According to the defendant, the defendant's nephew owned the shotgun.

Following a brief stay in Mississippi, they went to Texas.  Pursuant to a traffic stop in Laporte, Texas, Cox was arrested based on an arrest warrant for first-degree murder in Louisiana.  Following questioning in Texas by two detectives from the Tangipahoa Parish Sheriff's Office, he was extradited to Louisiana.

Detective Randy Henigan, who was with the Tangipahoa Parish Sheriff's Office when Ballard was killed, testified at trial that he investigated the crime scene.  Detective Henigan determined that a shotgun was fired from an open bathroom window in front of Ballard's house.  The bathroom door opened up to Ballard's bedroom.  It appeared that Ballard, who died on his bed, was either standing or sitting up on his bed when he was shot.  The distance from the bathroom window to the foot of Ballard's bed was about twelve feet.  Ballard's metal walker, which was near his bed, appeared to have been hit by the shotgun blast.  Detective Henigan testified that when he shook the walker, he could hear some of the BBs inside of it.  The front screened door and the window in the front door of the house were broken.  The two phone lines had been unplugged from the phone junction box on the outside of the house.  There was no weapon found in Ballard's house.  On

cross-examination, Detective Henigan testified that he was not a ballistics expert and that, while he could not state it as a fact, the evidence showed that the shots fired that killed Ballard came from outside the bathroom window.

The bathroom doorframe had a bullet hole. A slug was cut out of Ballard's bedroom wall. It appeared that a slug fired from the shotgun went through the bathroom doorframe and lodged into the north wall of Ballard's bedroom. The shotgun used to kill Ballard, later retrieved from Rainey's Auto Sales, was a New England Firearms single shot twelve gauge. This type of shotgun requires the barrel to be "cracked" open to load and unload each shot.

Patrick Lane, a firearms identification expert with the Louisiana State Police Crime Lab, testified at trial that the crime scene evidence indicated that two shots were fired, the slug and a No. 6 lead shot shell, which was the source of the pellets found at the scene and in Ballard's body. Lane could not determine if the slug found at the crime scene came from the shotgun that killed Ballard. Lane testified that while the slug was consistent with a twelve-gauge shotgun, "it is very, very rare to identify a slug back to a particular firearm."

Dr. Michael Defatta, the Chief Deputy Coroner and forensic pathologist for the St. Tammany Parish Coroner's Office, testified at trial that he autopsied Ballard, who was sixty-eight years old. Ballard sustained shotgun pellet patterns on his chest, arms, and face. There were also larger defects in the skin, which were consistent with some type of intermediate target in the pathway between Ballard and the shotgun. Regarding these defects in the skin, Dr. Defatta stated, "It was brought to my attention at the autopsy that there was a metal walker in the vicinity or next to Mr. Ballard in some way, shape or form. And certainly it was damaged. That would have explained a lot of the large defects on the body that I found."

A shotgun pellet, which perforated the heart, was found within the heart cavity. Multiple pellets were removed from the lungs and the entire chest cavity. The pellets entered on the front part of the heart. Ballard had a blood-alcohol content level of .016. The manner of death was determined to be homicide, and the cause of death was a shotgun wound to the chest.

Detective Jerry McDowell, who was with the Tangipahoa Parish Sheriff's Office when Ballard was killed, testified at trial that about eleven days after the killing, he and Detective Robert Bell interviewed the defendant while he was in custody at the Laporte, Texas Police Department. The defendant's interview was videotaped, and the videotape and transcript of the defendant's

statement were submitted into evidence.  The videotape was played for the jury.

The transcript of the defendant's statement indicates that, after being <u>Mirandized</u>, Cox, although initially denying shooting Ballard, confessed to shooting him.  The defendant stated that when he went to Ballard's house, Ballard and Booty were arguing.  Ballard had a pistol, and he told Cox to leave or he would shoot him.  Cox left, retrieved his nephew's shotgun from his truck and went back to the house.  Ballard fired a shot at the defendant.  The shot went through the glass window of the house.  Cox fired one shot at Ballard. At this point of the interview, Cox stated he was standing in Ballard's bedroom door when he shot Ballard.

Later in the interview, Cox stated that he shot a warning shot at Ballard through his bathroom window.  Ballard shot back, and Cox fired another shot at Ballard and killed him.  Cox then took Ballard's wallet, which contained about $1,200.00 or $1,300.00.  Still later in the interview, Cox stated that he shot Ballard because he was threatening his family.  When asked if Booty saw what happened, Cox stated that Booty came to the house after she heard the first shot fired.  When asked how they got inside, he stated that he broke the window out.

Cox testified at trial.  He stated that his statement given to Detectives McDowell and Bell was not true because he was scared. He also stated that statements he had given to doctors regarding the incident were not true.  He explained that he lied because he was trying to save Booty.  He testified that he did not shoot Ballard. When asked on direct examination about what happened on the day Ballard was killed, Cox offered the following explanation.  Booty got $70 in cash from Ballard to buy groceries for Ballard.  Instead, Booty and the defendant used the money to buy dope.  They smoked dope all day and got high.  Their children were with them.  Fearing that Ballard would be angry for not buying his groceries, they did not immediately go back to their trailer house, which was only about sixty yards away from Ballard's house.  They hung out at the river and built a fire.

When it got dark, the mosquitoes got so bad that they decided to go home.  Cox's truck was out of gas, so they had to walk home, which was about a quarter of a mile away.  When they got to their trailer, they began arguing because Booty wanted more dope.  Cox did not want to argue and went to bed.  Cox heard Booty leave the trailer, and about an hour later he heard Booty screaming for him to help her.  Cox grabbed his nephew's shotgun and some shells from

the trailer, loaded the shotgun, and ran to Ballard's house.  When he arrived, he saw Booty in the "bedroom" window trying to raise the window up.  The window was raised slightly.  Booty told Cox that Ballard was trying to kill her.  Booty was in the bathroom and the bathroom door was closed.  Unable to raise the window, Cox shoved the shotgun and the shells through the small opening made by the partially raised window.  Booty took the shotgun and fired a shot.  The shot made a hole in the doorframe, and the bathroom door came open.  Ballard was standing in the bathroom doorway.  Booty unloaded the shotgun, reloaded it, and shot Ballard.  He then went to the front door and tried to enter, but the door was locked.  Booty came to the front door with the shotgun in one hand and a wallet and some shells in the other hand.  Booty could not open the door, so she broke the glass windowpane in the door with the shotgun.  Cox then reached through the window and unlocked the door.  Booty gave Cox the shotgun and the shell casings and told him that he was just as much a part of this as she was.  They went to their trailer and picked up their children.  They went back to the river where the defendant's truck was.  Cox put the shotgun in his truck.  From there, they went to the Magnolia Inn Hotel in Hammond.

On cross-examination of the defendant, the following colloquy took place regarding whether there was a gun in Ballard's house:

> Q.:  There wasn't no gun in the house that night from Wallace Ballard?
>
> A.:  No, sir.
>
> Q.:  So when those police came back there the next day and said, "We didn't see no gun," they were right.  They (sic) were none to be recovered?
>
> A.:  That's right.[11]

---

[11]  <u>Cox</u>, 2007 WL 914880, at *1-4; State Rec., Vol. I of V.

### III.  Petitioner's Claims

### A.  Insufficient Evidence

Petitioner's first claim is that there was insufficient evidence to support his conviction.  On direct appeal, the Louisiana First Circuit Court of Appeal rejected that claim, holding:

> Cox argues the evidence was insufficient to support the conviction of second-degree murder.  He contends specifically, that the State failed to prove that it was he, instead of someone else, who shot and killed Ballard.
>
> A conviction based on insufficient evidence cannot stand as it violates Due Process.  See U.S. Const. amend. XIV; La. Const. art. I, § 2.  In reviewing claims challenging the sufficiency of the evidence, this Court must consider "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979).  See also La.Code Crim. P. art. 821(B); State v. Mussall, 523 So.2d 1305, 1308-1309 (La. 1988).  The Jackson v. Virginia standard of review, incorporated in Article 821, is an objective standard for testing the overall evidence, both direct and circumstantial, for reasonable doubt.  When analyzing circumstantial evidence, La. R.S. 15:438 provides that the factfinder must be satisfied the overall evidence excludes every reasonable hypothesis of innocence.  State v. Patorno, 01-2585, p. 5 (La.App. 1 Cir. 6/21/02), 822 So.2d 141, 144.
>
> La. R.S. 14:30.1 provides, in pertinent part:
>
> A. Second degree murder is the killing of a human being:
>
> (1) When the offender has a specific intent to kill or to inflict great bodily harm[.]
>
> Specific intent is that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act. La. R.S. 14:10(1).  Such state of mind can be formed in an instant.

State v. Cousan, 94-2503, p. 13 (La. 11/25/96), 684 So.2d 382, 390. Specific intent need not be proven as a fact, but may be inferred from the circumstances of the transaction and the actions of defendant. State v. Graham, 420 So.2d 1126, 1127 (La. 1982).

 The trier of fact is free to accept or reject, in whole or in part, the testimony of any witness. Moreover, when there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of the witnesses, the matter is one of the weight of the evidence, not its sufficiency. The trier of fact's determination of the weight to be given evidence is not subject to appellate review. An appellate court will not reweigh the evidence to overturn a factfinder's determination of guilt. State v. Taylor, 97-2261, pp. 5-6 (La.App. 1 Cir. 9/25/98), 721 So.2d 929, 932.

 When a case involves circumstantial evidence, and the jury reasonably rejects the hypothesis of innocence presented by the defendant's own testimony, that hypothesis falls, and the defendant is guilty unless there is another hypothesis that raises a reasonable doubt. State v. Captville, 448 So.2d 676, 680 (La. 1984). In the instant matter, the defendant's hypothesis of innocence was based on the theory that Booty shot Ballard. In finding the defendant guilty of second-degree murder, it is clear the jury resolved against the defendant the conflicts between the defendant's trial testimony and his taped statement, as well as the conflicts within the taped statement, itself. [FN4]  See Captville, 448 So.2d at 679.

> [FN4]  For example, during his taped interview, Cox stated that Ballard had a gun, yet, at trial, he testified that there was no gun in Ballard's house. Also, at one point during his taped interview, he stated that Booty was at Ballard's house arguing with him before he went over there with the shotgun. Later during the interview, Cox stated that Booty went to Ballard's house after she heard the first gunshot.

 Following the shooting of Ballard in Louisiana, Cox fled, in a newly bought vehicle, to Mississippi and then to Texas. During the early stages of the defendant's questioning by Detectives McDowell and Bell, Cox denied that he shot Ballard. He stated, "Now, who done killed the man. I don't really know. I really don't know who killed the man. I don't own a gun. My nephew had a shotgun. It was at the river with me." Later, the defendant stated, "I didn't killed

(sic) this man." As the interrogation progressed, Cox admitted that he shot and killed Ballard.

A finding of purposeful misrepresentation reasonably raises the inference of a "guilty mind," as in the case of flight following an offense or the case of material misrepresentation of facts following an offense. Lying has been recognized as indicative of an awareness of wrongdoing. Captville, 448 at 680 n. 4. The facts in the instant matter established acts of both flight and material misrepresentation by the defendant.

In finding Cox guilty, it is clear the jury rejected some or all of his trial testimony, as well as some of his taped statement, and concluded that his version of the events preceding and following the fatal shot was a fabrication designed to deflect blame from him. We are constitutionally precluded from acting as a "thirteenth juror" in assessing what weight to give evidence in criminal cases. See State v. Mitchell, 99-3342, p. 8 (La. 10/17/00), 772 So.2d 78, 83. The fact that the record contains evidence that conflicts with the testimony accepted by a trier of fact does not render the evidence accepted by the trier of fact insufficient. State v. Quinn, 479 So.2d 592, 596 (La.App. 1 Cir. 1985). The conclusion by the jurors that the defendant did not testify truthfully could reasonably support an inference that the "truth" – if told by him as the only witness to the killing who testified at trial – would have been unfavorable to his claim that it was Booty, and not he, who shot Ballard. See Captville, 448 So.2d at 680. Further, the testimony elicited at trial established that Ballard died as a result of a shotgun wound to the chest from about twelve feet away. The fact that Cox shot Ballard in the chest with a shotgun at a fairly close range indicates a specific intent to kill or inflict great bodily harm. See State v. Wallace, 612 So.2d 183, 190 (La.App. 1 Cir. 1992). As such, the hypothesis of innocence presented by the defendant falls.

After a thorough review of the record, we conclude that the evidence supports the jury's verdict. Viewing the evidence in the light most favorable to the State, any rational trier of fact could have found beyond a reasonable doubt, and to the exclusion of every reasonable hypothesis of innocence, that the defendant was guilty of second-degree murder.

The assignment of error is without merit.[12]

---

[12] Cox, 2007 WL 914880, at *4-6; State Rec., Vol. I of V.

The Louisiana Supreme Court then denied petitioner's related writ application without assigning additional reasons.[13]

Because a sufficiency of the evidence claim presents a mixed question of law and fact, this Court must defer to the state court's decision rejecting the claim unless petitioner shows that the decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1); Taylor v. Day, Civ. Action No. 98-3190, 1999 WL 195515, at *3 (E.D. La. Apr. 6, 1999), aff'd, 213 F.3d 639 (5th Cir. 2000).  For the following reasons, the Court finds that petitioner has made no such showing in the instant case.

As noted by the state court, claims of insufficient evidence are to be analyzed pursuant to the standard set forth in Jackson v. Virginia, 443 U.S. 307 (1979), which held that "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  Id. at 319.  Accordingly, "[t]he Jackson inquiry 'does not focus on whether the trier of fact made the *correct* guilt or innocence determination, but rather whether it made a *rational* decision to convict or acquit.'"  Santellan v. Cockrell, 271 F.3d 190, 193 (5th Cir. 2001) (quoting Herrera v. Collins, 506 U.S. 390, 402 (1993)) (emphasis added).  Moreover, Louisiana's circumstantial evidence standard requiring that the every reasonable hypothesis of innocence be excluded does *not* apply in federal *habeas corpus* proceedings; in these proceedings, *only* the Jackson standard need be satisfied, even if state law would impose a more demanding standard of

---

[13] Cox, 967 So.2d 1155; State Rec., Vol. I of V.

proof.  Foy v. Donnelly, 959 F.2d 1307, 1314 n.9 (5th Cir. 1992); Higgins v. Cain, Civ. Action No. 09-2632, 2010 WL 890998, at *21 n.38 (E.D. La. Mar. 8, 2010); Williams v. Cain, No. 07-4148, 2009 WL 224695, at *4 (E.D. La. Jan. 29, 2009); Davis v. Cain, Civ. Action No. 07-6389, 2008 WL 5191912, at *14 (E.D. La. Dec. 11, 2008); Wade v. Cain, Civil Action No. 05-0876, 2008 WL 2679519, at *6 (W.D. La. May 15, 2008) (Hornsby, M.J.) (adopted by Stagg, J., on July 3, 2008), aff'd, 372 Fed. App'x 549 (5th Cir. 2010).

For the reasons noted by the state court, the evidence in this case, viewed in the light most favorable to the prosecution, was clearly sufficient for any rational trier of fact to find petitioner guilty beyond a reasonable doubt.  Therefore, he cannot show that the state court's decision rejecting his claim was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States.  Accordingly, this Court must defer to the state court's decision rejecting that claim.

## B.  Ineffective Assistance of Trial and Appellate Counsel

Petitioner next claims that both his trial counsel and his appellate counsel were ineffective.  A petitioner bears the burden of proof on such a claim and "must demonstrate, by a preponderance of the evidence, that his counsel was ineffective." Jernigan v. Collins, 980 F.2d 292, 296 (5th Cir. 1993); see also Clark v. Johnson, 227 F.3d 273, 284 (5th Cir. 2000).  The United States Supreme Court established a two-prong test for evaluating ineffective assistance claims, holding that a petitioner must demonstrate both that counsel's performance was deficient *and* that the deficient performance prejudiced his defense.  Strickland v. Washington, 466 U.S. 668, 697 (1984).  If a court finds that a petitioner has made an insufficient showing as to either of the two prongs of

– 14 –

inquiry, i.e. deficient performance or actual prejudice, it may dispose of the ineffective assistance claim without addressing the other prong.  Id.

   To prevail on the deficiency prong of the Strickland test, a petitioner must demonstrate that counsel's conduct fails to meet the constitutional minimum guaranteed by the Sixth Amendment.  See Styron v. Johnson, 262 F.3d 438, 450 (5th Cir. 2001).  "Counsel's performance is deficient if it falls below an objective standard of reasonableness."  Little v. Johnson, 162 F.3d 855, 860 (5th Cir. 1998).  Analysis of counsel's performance must take into account the reasonableness of counsel's actions in light of all the circumstances.  See Strickland, 466 U.S. at 689.  "[I]t is necessary to 'judge ... counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct.'"  Lockhart v. Fretwell, 506 U.S. 364, 371 (1993) (quoting Strickland, 466 U.S. at 690).  A petitioner must overcome a strong presumption that the conduct of his counsel falls within a wide range of reasonable representation.  See Crockett v. McCotter, 796 F.2d 787, 791 (5th Cir. 1986); Mattheson v. King, 751 F.2d 1432, 1441 (5th Cir. 1985).

   The appropriate standard for determining prejudice varies slightly depending on whether a petitioner is challenging the actions of trial or appellate counsel.  In order to prove prejudice with respect to trial counsel, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694.  In this context, a reasonable probability is "a probability sufficient to undermine confidence in the outcome."  Id.  In making a determination as to whether prejudice occurred, courts must review the record to determine "the relative role that the alleged trial errors

played in the total context of [the] trial."   Crockett, 796 F.2d at 793.  In order to prove prejudice

with respect to a claim that appellate counsel was ineffective, a petitioner must show a reasonable

probability that he would have prevailed on appeal but for his counsel's deficient representation.

Briseno v. Cockrell, 274 F.3d 204, 207 (5th Cir. 2001); see also Smith v. Robbins, 528 U.S. 259,

286 (2000).  Therefore, a petitioner must demonstrate a reasonable probability that, if appellate

counsel's performance had not been deficient in the manner claimed, the appellate court would have

vacated or reversed the trial court judgment based on the alleged error.  Briseno, 274 F.3d at 210.

Because a claim of ineffective assistance of counsel is a mixed question of law and

fact, this Court must defer to the state court decision rejecting petitioner's claim unless that decision

was "contrary to, or involved an unreasonable application of, clearly established Federal law, as

determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1); Moore v. Cockrell,

313 F.3d 880, 881 (5th Cir. 2002).  For the following reasons, the Court finds that neither of those

conditions is met in the instant case.

In support of his claim, petitioner first argues that trial counsel was ineffective for

failing to object to the testimony of Detective Randy Henigan on the ground that his testimony

"went beyond his level of experience and expertise."[14]  Specifically, petitioner opines that counsel

should have objected to Henigan's testimony that the shots appeared to have been fired from outside

through the window.  Rather than objecting to that testimony, defense counsel elected instead to

---

[14]  Rec. Doc. 1-2, p. 26.

address the matter on cross-examination, at which time he forced Henigan to concede that he was engaging in speculation.[15]

In the post-conviction proceedings, the state district judge rejected petitioner's claim, holding:

> The failure of trial defense counsel Sherman Mack to object to testimony by Detective Randy Henigan was not error. It is doubtful that any bases for the objection could have legitimately been set forth and, in any event, the testimony concerning "opinions by Detective Henigan" was within the purview of any lay witness to give. It is noted that Detective Henigan was not testifying as an expert witness.[16]

Without assigning additional reasons, the Louisiana First Circuit Court of Appeal and the Louisiana Supreme Court then likewise denied the claim.[17]

This claim has no merit. A decision of counsel to forgo a particular objection is generally one of trial strategy, and, as such, is normally insufficient to support an ineffective assistance claim. See, e.g., Rios-Delgado v. United States, 117 F.Supp.2d 581, 589 (W.D. Tex. 2000) ("Generally speaking, a failure to object, standing alone, does not rise to the level of constitutionally deficient performance. In cases where an accused complains that counsel was ineffective because he did not object to something ..., the courts grant significant deference, as such actions fall squarely within the ambit of trial strategy."). The United States Supreme Court has held

---

[15] See, e.g., State Rec., Vol. IV of V, transcript of April 26, 2006, p. 387 ("I'm not a ballistics expert, so I can't say I know for a fact. But according to what the evidence showed, that's what it looked like.").

[16] State Rec., Vol. V of V, Written Reasons dated December 15, 2008.

[17] Cox, No. 2009 KW 0042; Cox, 28 So.3d 266; State Rec., Vol. I of V.

that federal *habeas* courts are not to second-guess counsel's strategic decisions through the distorting lens of hindsight but instead are to employ a strong presumption that the conduct falls within a wide range of reasonable assistance.  Strickland, 466 U.S. at 689; see also Burnett v. Collins, 982 F.2d 922, 930 (5th Cir. 1993).  Such deference is particularly appropriate here, in that any objection would have been of questionable merit and would have simply focused the jurors' attention on the unfavorable testimony at issue, perhaps thereby inflating its importance in their minds.  Counsel can hardly be deemed to have performed ineffectively in choosing to avoid that unnecessary risk, especially when, as here, he could address the matter more effectively on cross-examination.

Petitioner next argues that trial counsel was ineffective for failing to object when the jurors were not charged on the responsive verdict of negligent homicide.  In the post-conviction proceedings, the state district judge rejected that claim, holding:  "No error of law was committed by failing to instruct the jury on the alleged responsive verdict of negligent homicide.  This matter was fully addressed in the record, at trial, and on appeal.  No error was committed in any respect."[18] Without assigning additional reasons, the Louisiana First Circuit Court of Appeal and the Louisiana Supreme Court then likewise denied the claim.[19]

This claim, too, has no merit.  It has been noted:

A decision to forgo a charge on lesser included offenses is strategic in nature.  Strategic choices made after reasonable investigation will seldom if ever be found wanting, because we are reluctant to second-

---

[18]  State Rec., Vol. V of V, Written Reasons dated December 15, 2008.

[19]  Cox, No. 2009 KW 0042; Cox, 28 So.3d 266; State Rec., Vol. I of V.

> guess matters of trial strategy simply because the chosen strategy has
> failed.

Lake v. Portuondo, 14 Fed. App'x 126, 128 (2nd Cir. 2001) (internal citations and quotation marks omitted); see also United States *ex rel.* Webster v. DeTella, 965 F.Supp. 1124, 1132-33 (N.D. Ill. 1997) ("As for the decision not to offer a jury instruction on a lesser included offense, that is within the realm of trial strategy, an area in which Monday morning quarterbacking is discouraged. ... That [counsel's] strategy misfired is no proof of ineffectiveness; even the best trial attorney may misjudge trial strategy on occasion.").  Further, such a strategy may validly be employed if defense counsel feels that he can establish reasonable doubt with respect to the charged offense:

> Submission of lesser included offenses may give the jury a basis for finding a defendant guilty of a crime where the prosecution was unable to prove the elements of the original crime charged beyond a reasonable doubt.  Counsel may have appropriately wished to avoid this possibility and this decision therefore did not constitute ineffective assistance of counsel.

Colon v. Smith, 723 F.Supp. 1003, 1008 (S.D.N.Y. 1989).  "Additionally, counsel's failure to push for inclusion of a special charge on a lesser offense may result from an equally valid strategic choice to avoid a possible compromise verdict, opting instead to try to obtain a hung jury or an outright acquittal." Parker v. Cain, 445 F.Supp.2d 685, 709 (E.D. La. 2006); see also  Smith v. Terrell, Civ. Action No. 09-3791, 2009 WL 4799190, at *7 (E.D. La. Dec. 7, 2009).  Therefore, this Court cannot say that counsel's choice constituted deficient performance.

In any event, petitioner's claim also fails for an additional reason:  he cannot show that he was prejudiced by counsel's decision on this matter.  This Court's observation in Parker is equally applicable to the instant case and an independent basis for denying petitioner's claim:

> Moreover, even if counsel's performance were found to be deficient in that respect, the Court additionally finds that petitioner has not established prejudice.  In light of the overwhelming evidence of petitioner's guilt of second degree murder and the jury's obvious rejection of the responsive verdict of the lesser crime of manslaughter, there is no reasonable probability that  the outcome would have changed in this case even if the negligent homicide instruction had been given.  Accordingly, he has demonstrated no prejudice resulting from counsel's failure to request such an instruction.

Parker, 445 F. Supp.2d at 709-10.

Petitioner also argues that counsel failed to investigate the crime scene or to request funds for expert witnesses in "ballistics, trajectory, firearms and spray patterns."[20]  In the post-conviction proceedings, the state district judge rejected that claim, holding:

> Any failure by trial counsel to investigate the crime scene or to request state funds for an expert witness does not rise to the level of incompetence.  Petitioner's assertions are merely speculation that an expert would have provided exculpatory evidence or that the services of such an expert were needed in any fashion.[21]

Without assigning additional reasons, the Louisiana First Circuit Court of Appeal and the Louisiana Supreme Court then likewise denied the claim.[22]

It is clear that "counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." Strickland, 466 U.S. at 691. "[A] particular decision not to investigate must be directly assessed for reasonableness in all the

---

[20]   Rec. Doc. 1-2, p. 39.

[21]   State Rec., Vol. V of V, Written Reasons dated December 15, 2008.

[22]   Cox, No. 2009 KW 0042; Cox, 28 So.3d 266; State Rec., Vol. I of V.

circumstances, applying a heavy measure of deference to counsel's judgments." Id. Moreover, the mere fact that counsel's pretrial investigation failed to exhaust every possible avenue for exploration is not determinative. See Lovett v. Florida, 627 F.2d 706, 708 (5th Cir. 1980) ("[C]ounsel for a criminal defendant is not required to pursue every path until it bears fruit or until all conceivable hope withers."). Additionally, and perhaps most importantly, to prevail on a claim for inadequate investigation, a petitioner must provide factual support as to what further investigation would have revealed. See Moawad v. Johnson, 143 F.3d 942, 948 (5th Cir. 1998); see also Brown v. Dretke, 419 F.3d 365, 375 (5th Cir. 2005); Davis v. Cain, Civ. Action No. 07-6389, 2008 WL 5191912, at *10 (E.D. La. Dec. 11, 2008). In the instant case, petitioner has not pointed to evidence in the record demonstrating that further investigation would in fact have revealed additional information beneficial to the defense. Accordingly, he has not demonstrated that he was prejudiced by the allegedly inadequate investigation, and his claim therefore fails. See Thomas v. Cain, Civ. Action No. 09-4425, 2009 WL 4799203, at *9 (E.D. La. Dec. 9, 2009).

Additionally, with respect to petitioner's claim that counsel was ineffective for failing to obtain state funding to retain and call expert witnesses, that claim likewise fails. As the United States Fifth Circuit Court of Appeals recently reiterated:

> Claims that counsel failed to call witnesses are not favored on federal habeas review because the presentation of witnesses is generally a matter of trial strategy and speculation about what witnesses would have said on the stand is too uncertain. For this reason, we require petitioners making claims of ineffective assistance based on counsel's failure to call a witness to demonstrate prejudice by naming the witness, demonstrating that the witness was available to testify and would have done so, setting out the content of the witness's proposed testimony, and showing that the testimony would have been favorable to a particular defense. This requirement applies to both uncalled lay and expert witnesses.

Woodfox v. Cain, 609 F.3d 774, 808 (5th Cir. 2010) (citations quotation marks, and brackets omitted).  Petitioner clearly has not met his burden, in that he has not even identified any experts who would have expressed an opinion beneficial to the defense.

Moreover, petitioner's claim also fails for an additional reason.  While an expert's opinion might have proven to be exculpatory, it is also possible that his opinion might have proven damaging.  Counsel's decision not to pursue such evidence that could be double-edged in nature is objectively reasonable and does not amount to deficient performance.  Id. at 811.

Lastly, petitioner claims that his appellate counsel was ineffective.  However, he offers no explanation of this claim and fails to identify in what way appellate counsel was allegedly ineffective.  Therefore, he has made no attempt whatsoever to meet his burden of proof to demonstrate deficient performance and resulting prejudice.  Simply put, petitioner's allegations are wholly conclusory, and it is clear that such "conclusory allegations of ineffective assistance of counsel do not raise a constitutional issue in a federal habeas proceeding."  Miller v. Johnson, 200 F.3d 274, 282 (5th Cir. 2000); see also Baxter v. Quarterman, 270 Fed. App'x 313, 314 (5th Cir. 2008); Orange v. Cain, Civ. Action No. 06-10761, 2009 WL 938909, at *20 (E.D. La. Apr. 6, 2009).

## C.  Actual Innocence

Petitioner's final claim is that his petition should be granted because he is not guilty of the crime of which he stands convicted.  However, such claims of actual innocence are not cognizable in federal *habeas corpus* proceedings.  As Justice Holmes noted long ago, what a federal *habeas* court has "to deal with is *not* the petitioner['s] innocence or guilt but *solely* the question

whether [his] constitutional rights have been preserved." <u>Moore v. Dempsey</u>, 261 U.S. 86, 87-88

(1923) (emphasis added).  The Supreme Court reiterated that view seventy years later, noting:

> Claims of actual innocence based on newly discovered evidence have *never* been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding. ... This rule is grounded in the principle that federal habeas courts sit to ensure that individuals are not imprisoned in violation of the Constitution – *not* to correct errors of fact.

<u>Herrera v. Collins</u>, 506 U.S. 390, 400 (1993) (emphasis added); <u>see also</u> <u>Kincy v. Dretke</u>, 92 Fed.

App'x 87, 92 (5th Cir. 2004); <u>Lucas v. Johnson</u>, 132 F.3d 1069, 1074 (5th Cir. 1998); <u>Newman v.

Cain</u>, Civ. Action No. 09-4445, 2010 WL 1817771, at *7-8 (E.D. La. Apr. 12, 2010), <u>adopted</u>, 2010

WL 1838064 (E.D. La. May 4, 2010); <u>Bolton v. Cooper</u>, Civ. Action No. 07-626, 2007 WL

2713259, at *4 (E.D. La. Sept. 14, 2007).  Where, as here, a convicted inmate simply claims that he

is innocent, his recourse is to seek executive clemency, not federal *habeas corpus* relief.  <u>Herrera</u>,

506 U.S. at 417.

## <u>RECOMMENDATION</u>

Accordingly, **IT IS RECOMMENDED** that petitioner's application for federal

*habeas corpus* relief be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and

recommendation in a magistrate judge's report and recommendation within fourteen (14) days after

being served with a copy shall bar that party, except upon grounds of plain error, from attacking on

appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district

court, provided that the party has been served with notice that such consequences will result from

a failure to object.  28 U.S.C. § 636(b)(1); <u>Douglass v. United Services Auto. Ass'n</u>, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).[23]

New Orleans, Louisiana, this twenty-third day of November, 2010.

**SALLY SHUSHAN**
**UNITED STATES MAGISTRATE JUDGE**

---

[23] <u>Douglass</u> referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend that period to fourteen days.